DUKE & COMPANY INC., a
corporation, Appellant,

v.

Thomas J. FOERSTER, Individually
and as Commissioners of the
County of Allegheny, et al.

No. 74–2047.

United States Court of Appeals,
Third Circuit.

Argued April 18, 1975.

Decided Aug. 5, 1975.

**1278**

Howard A. Specter, Edward C. Smith, Harry J. Gruener, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for appellant.

Stephen A. Zappala, County Sol., Wm. R. Caroselli, Asst. County Sol., Pittsburgh, Pa., for appellee, County Stadium.

James R. Duffy, Dennis L. Veraldi, Ruffin, Hazlett, Perry & Lonergan, Pittsburgh, Pa., for appellee, Public Auditorium Authority of Pitts. and Allegheny County.

David J. Armstrong, Charles W. Kenrick, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee, Stadium Authority of the City of Pittsburgh.

Before SEITZ, Chief Judge, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

■ The complaint by Duke & Company, Inc. names seven defendants: three municipal corporations,[1] three private corporations,[2] and one individual,[3] named both in his official capacity as elected Commissioner of Allegheny County and as a private person. The district court granted a motion to dismiss the complaint as to the three municipal corporations and the individual defendant as Commissioner and certified the finality of the judgment in favor of the municipal defendants under F.R.Civ.P. 54(b).[4]

The complaint alleges that around November 1972 the defendants "entered into an agreement, contract and/or conspiracy in restraint of trade," which violated section 1 of the Sherman Act, 15 U.S.C. § 1 (1970). The purpose of the alleged agreement was to boycott malt beverages manufactured by plaintiff in the municipal facilities operated by defendants.

In November 1972 plaintiff was engaged in the business of manufacturing and selling malt beverages in interstate commerce. The defendant municipal corporations own, and defendant private corporations are involved in the operation of three public facilities—Pittsburgh Civic Arena, Three Rivers Stadium, and the Pittsburgh International Airport—where sales of malt beverages are made. Prior to November 1972, plaintiff's products were sold at all three facilities. Plaintiff claims that sales of its products

1. (1) The Public Auditorium Authority of Pittsburgh and Allegheny County, which at all pertinent times owned and operated the Pittsburgh Civic Arena; (2) the Stadium Authority of the City of Pittsburgh, which at all pertinent times owned and operated Three Rivers Stadium in Pittsburgh and (3) the County of Allegheny, which at all pertinent times owned and operated the Greater Pittsburgh International Airport.

2. (1) Three Rivers Management Corporation, which at all pertinent times operated the Three Rivers Stadium pursuant to an agreement with the Stadium Authority; (2) Pittsburgh Athletic Company, Inc., which at all pertinent times owned the concession rights for the sale of

food and beverages at Three Rivers Stadium pursuant to an agreement with the Management Corporation and the Stadium Authority, and (3) Restaurant Associates Industries, Inc., which at all pertinent times owned concession rights for the sale of food or beverages at Three Rivers Stadium pursuant to an agreement with the Athletic Company.

3. The individual defendant is Thomas J. Foerster, who was at all pertinent times a publicly-elected Commissioner of Allegheny County.

4. The district court did not direct the entry of final judgment with respect to defendant County Commissioner. He therefore could not be a party to this appeal.

have been adversely affected by the alleged boycott agreement not only because the products are no longer sold in the municipal facilities under defendants' control, but also because public consumption "in Allegheny County, Western Pennsylvania and elsewhere" has decreased as a result of the alleged agreement "and notoriety given thereto."

■ The district court based its dismissal of the complaint against the governmental defendants on the Supreme Court's decisions in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), *Eastern Railroad Presidents Conference v. Noerr Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), *reh. den.* 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864 and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The court held that the three municipal defendants were immune[5] under the antitrust laws.

On appeal, plaintiff contends that *Parker* may be distinguished from the case at bar. The essence of plaintiff's argument is that Parker shields state governmental agencies with immunity from antitrust liability only when (1) any actions undertaken by the agencies that result in a restraint of trade are directed by a specific state legislative mandate, and (2) the state's purpose is sufficiently significant so as to override the federal antitrust laws *or* is consistent with a federal policy that overrides the antitrust laws. Plaintiff also contends that *Parker* precludes extension of immunity to municipal entities that conspire with private parties to violate the antitrust laws.

In rebuttal, defendants make two substantial arguments. First, they contend that under *Parker* they are exempt from antitrust liability when acting within the scope of their authority and exercising the powers delegated to them by law and that plaintiff's bare allegations of a combination in restraint of trade are insufficient to state a cause of action

against them. Second, they contend that a government agency's response to even anti-competitive lobbying is insufficient, under *Noerr* and *Pennington*, to bring with it antitrust liability.

■ In reviewing the district court's dismissal of plaintiff's complaint against the governmental defendants we must construe all the allegations of the complaint in a manner most favorable to plaintiff. The sole issue for us on appeal is whether under the allegations the governmental defendants (hereinafter "defendants") are immune under the federal antitrust laws.

I. THE PARKER DOCTRINE: DELINEATION OF ANTITRUST IMMUNITY OF STATE GOVERNMENTAL ENTITIES

In *Parker v. Brown, supra,* the Supreme Court reviewed a California program for marketing agricultural commodities produced in the state. The program was designed to restrict competition among growers of grapes used to produce raisins and to maintain prices to packers. The program's object was to conserve "the agricultural wealth of the State" and to prevent "economic waste in the marketing of agricultural products" of the state. The Supreme Court assumed that had the program been the product of a purely private combination it would have violated the antitrust laws. *Id.* 317 U.S. at 350, 63 S.Ct. 307.

However, the Court found that California's program "derived its authority and its efficacy from the legislative command of the state and was not intended to operate or become effective without that command." *Id.* Thus, the anticompetitive effect of the program was unquestionably the result of a conscious decision by the state legislature that such a result was in the best interest of the state. The measures that restricted competition were adopted pursuant to the explicit directive of the state legisla-

---

5. We shall also employ the term "immunity" although we are aware its preciseness in our context may be open to question because it smacks of an affirmative defense while the thrust of *Parker* is that the Sherman Act is simply inapplicable to activity mandated by state authority.

ture. In this context, where the state "as sovereign, imposed the restraint as an act of government," *id.* at 352, 63 S.Ct. at 314, the Court held that the Sherman Act was inapplicable. Defendants argue for a broad construction of *Parker,* contending that so long as they were performing governmental functions or were acting within the scope of their authority, they are shielded from antitrust liability under *Parker.*

The Supreme Court was recently provided with the opportunity to review its decision in *Parker.* In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), decided after the district court's judgment in the case at bar, the Court was confronted with the question of whether a minimum fee schedule published by the Fairfax County Bar Association and enforced by the Virginia State Bar constituted price fixing in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (1970). Both the district court and the Court of Appeals had held that the State Bar was immune from antitrust liability under *Parker.*

The Supreme Court noted that the State Bar was a state agency by law. *Id.* at 789, 95 S.Ct. 2014. However, the Court stated that the Bar's status as a state agency for "limited purposes" did not shield it from antitrust liability when it engaged in monopolistic activity for the benefit of its members. The Court indicated that under *Parker,* "[t]he threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign." *Id.* at 790, 95 S.Ct. at 2015.

The Court found that the Commonwealth of Virginia could not be said to have directed the State Bar's anticompetitive activities. The State Bar was unable to point to any state statute requiring the activities in question or even mentioning fees, advisory fee schedules or the kind of minimum price schedule enforced by the State Bar. The Court concluded:

It is not enough that, as the County Bar puts it, anticompetitive conduct is "prompted" by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign. *Id.*

■ We read *Goldfarb* as holding that, absent state authority which demonstrates that it is the intent of the state to restrain competition in a given area, *Parker*-type immunity or exemption may not be extended to anti-competitive government activities. Such an intent may be demonstrated by explicit language in state statutes, or may be inferred from the nature of the powers and duties given to a particular government entity. We proceed to an analysis of the statutory authority of those defendants-appellees in the light of the foregoing principles.

## II. DEFENDANT'S STATUTORY AUTHORITY

Several Pennsylvania statutes relate to the powers and authority of defendant municipal corporations. Defendant County of Allegheny was organized under 16 P.S. § 3101 *et seq.* (1956), as a Second Class County. It is granted the usual powers of a county government under 16 P.S. § 3202 (1956), and is specifically empowered to establish airports and terminal facilities under 16 P.S. §§ 5401–5408 (1956). In particular the County is given the power, in § 5404, to:

. . . enter into agreements in the form of a lease, permit, license, concession or otherwise for the use of the [airport or terminal facilities] or part thereof, for any adequate consideration, with any person or corporation desiring to use the same for any navigation and terminal purpose or of any air navigation and terminal facility

. . . .

The County is additionally authorized to incorporate public auditorium authorities under the Public Auditorium Authorities Law, 53 P.S. § 23841 *et seq.* (1957).

Defendants Public Auditorium Authority of Pittsburgh and Allegheny County

and Stadium Authority of Pittsburgh were both created under the Public Auditorium Authorities Law. Under 53 P.S. § 23845, they are empowered to exercise the powers of the Commonwealth as agencies, and to maintain and operate public auditoriums "to benefit the people of the Commonwealth." Under that section each is also vested with certain general powers including the power to make contracts "necessary or convenient for the carrying on of its business" and to "do all acts and things necessary or convenient for the promotion of its business . . . ." We are not aware of, nor have defendants cited us to, any other relevant statutory elaboration of the powers of these defendants.

■ Defendants contend that under the foregoing statutory provisions they are granted broad powers to manage the public facilities under their control, that they were acting within the scope of these powers when any of the alleged acts took place and that their conduct was shielded from antitrust liability under *Parker*. In particular, defendants Auditorium Authority and Stadium Authority cite 53 P.S. § 23845, claiming that the alleged agreement not to buy plaintiff's products came within the grant of all powers "necessary and convenient" to run the public facilities. Alternatively, they argue that under the above provisions the selection of products must be made in such a fashion as "to benefit the people of the Commonwealth" and thus they had the implied power to exclude plaintiff's products.

Under the standards enunciated in *Parker* and *Goldfarb*, we conclude that this is not a case where *Parker*-type immunity should be extended to state governmental entities. We see no basis in the relevant provisions of the Pennsylvania Statutes for concluding that the anti-competitive activities alleged by plaintiff were "compelled by direction of the State acting as a sovereign." *Goldfarb, supra* 421 U.S. at 791, 95 S.Ct. at 2015. As in *Goldfarb,* defendants here have pointed to no statute which would compel or even permit the boycott that plaintiff alleges took place. Certain of the defendants undoubtedly had the statutory power to choose products to be sold through the concessions in the public facilities which they own and operate as a function of their authority to manage the facilities. However, nothing explicit or implicit in their statutory authority mandates or permits discrimination against certain suppliers. We therefore conclude that the district court erred in holding that plaintiff's complaint failed to state a claim because the defendants' alleged activities were exempt from antitrust scrutiny under the state action exception of *Parker*.

## III. NOERR–PENNINGTON IMMUNITY

Defendants also contend that they are entitled to immunity under the doctrine announced in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., supra,* and refined in *United Mine Workers v. Pennington, supra.* Both *Noerr* and *Pennington* involved instances of private lobbying to influence official action. In *Noerr* the plaintiffs alleged that the defendants had conducted a publicity campaign with the intent of fostering legislative action destructive of plaintiffs' businesses. The Court held:

> We think it . . . clear that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly. 365 U.S. at 136, 81 S.Ct. at 529.

In *Pennington* the plaintiffs alleged an anti-competitive conspiracy between a union and coal companies which included successful attempts to influence the Secretary of Labor to establish a minimum wage under the Walsh-Healey Act, as amended, 41 U.S.C. § 35 *et seq.* (1970). Both the Court of Appeals and the district court had interpreted *Noerr* as holding that the lobbying exemption applied only where there was not a specific illegal intent or purpose inherent in the

lobbying activities. The Supreme Court rejected this approach stating: "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent of purpose." 381 U.S. at 670, 85 S.Ct. at 1593.

■ Defendants contend that *Noerr-Pennington* immunity covers a state governmental entity which "listens to anticompetitive pleas." Doubtlessly this proposition is correct so long as the public body acts within its legal discretion and in what it considers the public interest. However, we find that both this proposition and the *Noerr-Pennington* doctrine are inapplicable to this case.

■ Both *Noerr* and *Pennington* involved suits against *private parties* who had allegedly conspired to influence governmental action. In neither case was it alleged that the governmental entity had collaborated to promote the conspiracy. Where the complaint goes beyond mere allegations of official persuasion by anticompetitive lobbying and claims official participation with private individuals in a scheme to restrain trade, the *Noerr-Pennington* doctrine is inapplicable. *See Harman v. Valley National Bank of Arizona,* 339 F.2d 564 (9th Cir. 1964).

■ *Parker* reserved judgment on such an alleged combination of public and private entities. After *Goldfarb,* however, it is clear that when there is an allegation of governmental participation in such a combination to the benefit or detriment of private parties, and when the activities of the public body are not compelled by the state acting as a sovereign, a claim has been stated under the antitrust laws. No protection is afforded to such a combination under the doctrine of *Noerr-Pennington.*

We conclude that the allegations of the complaint state an antitrust claim against these defendants despite their governmental status.[6]

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

6. No question is raised on appeal concerning the applicability of the Eleventh Amendment to this case.