Michael BRENNER et al.

v.

**STATE BOARD OF MOTOR VEHICLE MANUFACTURERS, DEALERS & SALESMEN, et al.**

Civ. A. No. 75–3336.

United States District Court, E. D. Pennsylvania.

April 16, 1976.

Harold Cramer, Philadelphia, Pa., for plaintiffs.

Robert P. Kane, Atty. Gen. of Pa., Howard M. Holmes, Asst. Atty. Gen. of Pa., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

On November 19, 1975, plaintiffs commenced this action seeking, *inter alia,* to temporarily restrain defendants State Board of Motor Vehicle Manufacturers, Dealers & Salesmen ("Board") and its individual members from conducting a hearing set for November 20, 1975. The hearing was scheduled to determine whether or not plaintiffs' motor vehicle dealer and salesmen licenses should be revoked. At a conference held that same day between the Court and all counsel, counsel for defendants agreed to postpone the scheduled hearing until such time as the Court rendered a decision concerning the issues raised by the complaint.[1] In addition, we requested counsel to furnish the Court with briefs in support of their respective positions as to whether plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction. We now address that issue.

1. In light of that agreement, counsel for plaintiffs withdrew their motion for a temporary restraining order, without prejudice to refile, on November 20, 1975.

2. The new regulations became effective on May 31, 1975, upon their publication in the Pennsyl-

The Board is an administrative agency created by the Motor Vehicle Manufacturer's, Dealer's and Salesmen's License Act ("Act"), 63 P.S. § 801 *et seq.* (Supp.1975). The Act requires the Board to be composed of three new car dealers, two used car dealers, one mobile home dealer, one motor vehicle salesman and three members of the general public who have no connection with the motor vehicle business. Also, the Commissioner of Professional and Occupational Affairs, defendant Edward W. Robinson, Jr., is an *ex officio* member. *See* 63 P.S. § 803(1) (Supp.1975). The complaint names the seven non-general public Board members as defendants in this case.

Under 63 P.S. § 805(2)(i)–(xvi) (Supp. 1975), the Board has the power to suspend and revoke licenses issued by the Board if, after due notice and hearing, the charged party is found guilty of committing or attempting to commit any one of sixteen prohibited acts. In addition, under § 805(6), the Board is permitted "[t]o adopt, promulgate and enforce such administrative rules and regulations not inconsistent with [the] act as are deemed necessary and proper by the board to carry into effect the powers conferred by [the] act as set forth in [§ 805(2)(i)–(xvi)] . . .." Pursuant to that section, the Board, on May 15, 1975, promulgated a new set of administrative regulations concerning the licensing and regulating of motor vehicle manufacturers, dealers and salesmen.[2] Sections 19.21(r) and (s) of those regulations prohibit a dealer from either advertising or otherwise holding out to the public that he or she is selling new motor vehicles, or from selling new motor vehicles, for which the dealer does not have a written contract with a manufacturer, importer or distributor authorizing the sale of such vehicles.[3]

Plaintiffs attack sections 19.21(r) and (s) on the ground that they constitute an un-

vania Bulletin. *See* 5 *Pennsylvania Bulletin* 1403; 49 Pa.Code § 19.1 *et seq.*

3. Sections 19.21(r) and (s) provide:
 r. A dealer (new or used car, mobile home, or recreational vehicle dealer) who advertises or otherwise holds out to the public

constitutional deprivation of their right to engage in their profession, and on the ground that they are unauthorized and illegal as a matter of state law. In addition, plaintiffs allege that they cannot obtain a fair and impartial hearing before the Board, as is required by the Due Process Clause of the Fourteenth Amendment. Finally, plaintiffs contend that the seven non-general public Board members have conspired and combined, through the promulgation and enforcement of sections 19.21(r) and (s), to substantially restrain, restrict and limit competition in the acquisition, purchase and sale of new cars by non-franchised dealers, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

Count I of the complaint alleges that sections 19.21(r) and (s) deny plaintiffs the right to engage in their profession, presumably in violation of the Due Process Clause of the Fourteenth Amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Jurisdiction is predicated upon 28 U.S.C. § 1331(a) and 28 U.S.C. §§ 1343(3) and 1343(4).[4] In effect, plaintiffs are contending that those regulations deprive them of liberty and property without due process of law—substantive due process of law.

■ It is clear that such a claim is, on its face, encompassed within the parameters of the Due Process Clause and § 1983, as well as the jurisdictional statutes, 28 U.S.C. §§ 1331(a) and 1343(3). However, those jurisdictional sections can only confer subject matter jurisdiction upon this Court if the constitutional claim is of sufficient substance to support that jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577, 587 (1974). Conversely, we are without power to entertain plaintiffs' claim if it is " 'so attenuated and unsubstantial as to be absolutely devoid of merit,' *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904); 'wholly insubstantial,' *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 550–551, 7 L.Ed.2d 512 (1962); 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); 'plainly unsubstantial,' *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); or 'no longer open to discussion,' *McGilvra v. Ross*, 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909)." *Hagans v. Lavine, supra*, 415 U.S. at 536–537, 94 S.Ct. at 1379, 39 L.Ed.2d at 588. *See Bell v. Hood*, 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946). A claim may be plainly insubstantial "either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " *Ex Parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152, 153 (1933) (citations omitted).

■ Measured by these standards, plaintiffs' count I due process claim does not

---

that such dealer is selling new motor vehicles for which he does not hold a contract in writing with a manufacturer, importer or distributor giving said dealer authority to sell such motor vehicles will be held to be in violation;

s. A dealer (new or used car, mobile home, or recreational vehicle) who sells new motor vehicles for which he does not hold a contract in writing with a manufacturer, importer or distributor giving said dealer authority to sell such motor vehicles, will be held to be in violation;

(*Explanatory Note*: It is the clear legislative intent as expressed in § [805](2)(xv) and (xvi) that new vehicles may be advertised and sold only by new vehicle dealers having a franchise to sell such vehicles. The purpose to be served by this provision of the Act is to protect the public from being misled into believing that they are purchasing from an authorized dealer and thereby being defrauded as to warranty and other rights against the dealer and the manufacturer.) *See* 49 Pa.Code § 19.22(18) and (19).

4. Although count I does not specifically mention the Due Process Clause of the Fourteenth Amendment or 42 U.S.C. § 1983, in light of plaintiffs' citation of 28 U.S.C. §§ 1331(a), 1343(3) and 1343(4) as jurisdictional bases, the alleged deprivation and language to that effect contained in plaintiffs' Memorandum of Law in Support of Jurisdiction, the Court believes that plaintiffs intended to allege such violations. *See* Fed.R.Civ.P. 8(a)(1).

present a substantial federal question. Although the Supreme Court has not specifically dealt with regulations like the ones in the instant case, it has, on numerous occasions, dealt with licensing regulations which have had the identical effect which plaintiffs complain of here—a denial of the right to engage in a particular occupation or profession. For example, in *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), a provision of an Oklahoma statute made it unlawful for opticians to fit lenses to a face or to duplicate or replace into frames lenses or other optical appliances, except upon written prescriptive authority of an Oklahoma licensed optometrist or ophthalmologist. A three-judge district court found that the provision "violated the Due Process Clause by arbitrarily interfering with the optician's right to do business." *Id.* at 486, 75 S.Ct. at 464, 99 L.Ed. at 571. The Supreme Court reversed, noting that:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. *Id.* at 488, 75 S.Ct. at 464, 99 L.Ed. at 572 (citations omitted).

Similarly, in *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), the Court sustained the constitutionality of a state law prohibiting persons other than lawyers from engaging in the business of debt adjusting and debt pooling. The Court stated:

> We conclude that the Kansas Legislature was free to decide for itself that legisla-

tion was needed to deal with the business of debt adjusting. Unquestionably, there are arguments showing that the business of debt adjusting has social utility, but such arguments are properly addressed to the legislature, not to us. We refuse to sit as a "superlegislature to weigh the wisdom of legislation," . . . .. Nor are we able or willing to draw lines by calling a law "prohibitory" or "regulatory." Whether the legislature takes for its textbook Adam Smith, Herbert Spencer, Lord Keynes, or some other is no concern of ours. The Kansas debt adjusting statute may be wise or unwise. But relief, if any be needed, lies not with us but with the body constituted to pass laws for the State of Kansas. *Id.* at 731–732, 83 S.Ct. at 1032, 10 L.Ed.2d at 97 (footnotes omitted).

Most recently, in *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973), the Court found, after a review of its cases which discarded the doctrine of economic substantive due process, that certain restrictive statutory requirements for permitting the operation of a pharmacy did not offend the Due Process Clause of the Fourteenth Amendment.

 In light of those cases, it is apparent that this Court is foreclosed from examining the wisdom or propriety of the questioned regulations. The Pennsylvania Legislature, acting through the Board, was free, insofar as "economic substantive due process" is concerned, to adopt and enforce those regulations even though the effect may be to hinder or to prevent plaintiffs from engaging in the automobile dealer business.[5] Accordingly, count I must be

---

**5.** Plaintiffs' citation to *New State Ice Co. v. Liebmann*, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747 (1932) affords them no comfort. That case "belongs to that vintage of decisions which exalted substantive due process by striking down state legislation which a majority of the Court deemed unwise." *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., supra*, 414 U.S. at 164, 94 S.Ct. at 412, 38 L.Ed.2d at 385. As mentioned above, the *New State Ice Co.* line of cases has been abandoned

by the more recent pronouncements of the Supreme Court. *See Colorado Springs Amusements, Ltd. v. Rizzo*, 524 F.2d 571, 576 n. 17 (3d Cir. 1975), *petition for cert. filed*, 44 U.S.L.W. 3428 (U.S. Jan. 14, 1976) (No. 75–999). Similarly, plaintiffs' citation to *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) and *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), does not buttress their position. *Griffiths* struck down a state court regulation, which excluded aliens from

dismissed for want of a substantial federal question.[6]

Unlike count I, count IV raises a substantial federal question. It alleges that defendant Fierstein is either himself a General Motors Corporation ("GMC") franchisee, or is the owner, part owner or chief executive officer of a business holding a GMC franchise agreement for the sale of new General Motors cars. It further alleges that at least two other individual defendants are franchised new car dealers and that the remaining are or have been engaged in the franchise motor vehicle business. Finally, it alleges that, as a result of the "pecuniary interest" of the above Board members "in creating and maintaining a competitive advantage for franchise motor vehicle dealers by preventing non-franchise motor vehicle dealers from advertising or selling new cars," the Board is biased and is predetermined to suspend or revoke plaintiffs' licenses. In light of the foregoing, plaintiffs contend that they cannot obtain a fair and impartial hearing before the Board, as is required by the Due Process Clause of the Fourteenth Amendment.

Plaintiffs principally rely on *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), in support of their contention that count IV raises a substantial federal question. *Gibson* involved the granting of an injunction by a three-judge court which restrained the Alabama Board of Optometry ("Board of Optometry") from holding a hearing concerning the suspension or revocation of licenses of optometrists employed by corporations or other business establishments. The court found that there was a possibility of bias on the grounds that: (1) since the Board of Optometry consisted of independent practitioners of optometry not employed by others, the revocation of the licenses of non-independent practitioners would possibly redound to the personal benefit of the Board of Optometry members, *i. e.*, they would inherit the non-independent practitioners' business; and (2) since the Board of Optometry had previously brought suit against the plaintiffs on virtually identical charges in the state court, there was a possibility of prejudgment of the facts. Such bias, the court concluded, would effectively deprive the plaintiffs of their property without due process of law. The Supreme Court affirmed only as to the ground of possible personal interest, noting that "[i]t is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* at 579, 93 S.Ct. at 1698, 36 L.Ed.2d at 500 (citation omitted).

■ So too, plaintiffs have alleged here that the individual members of the Board are biased because of their personal pecuniary interest in maintaining a competitive advantage for franchised motor vehicle dealers at the expense of the non-franchised dealers. It is beyond peradventure that such an allegation raises a substantial federal question. Accordingly, the Court has subject matter jurisdiction over count IV of the complaint.[7]

the practice of law in Connecticut, as violative of the Equal Protection Clause of the Fourteenth Amendment. *Greene* held that, absent explicit authorization from either the President or Congress, the Department of Defense was not empowered to deprive the plaintiff of his job (*via* revocation of security clearance) "in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." *Id.* at 508, 79 S.Ct. at 1420, 3 L.Ed.2d at 1397. The Court specifically declined to decide whether the particular revocation *hearing procedures* were constitutionally permissible, *i. e.*, not violative of the due process provision of the Fifth Amendment. *Id.* at 509, 79 S.Ct. at 1420, 3 L.Ed.2d at 1398. (Harlan, J., concurring specially).

6. It is not necessary to convene a three-judge court under 28 U.S.C. § 2284 to rule upon this issue, as a single district judge has the authority to dismiss for lack of subject matter jurisdiction when the constitutional attack upon a state statute is plainly insubstantial. *Ex Parte Poresky, supra*, 290 U.S. at 32, 54 S.Ct. at 4, 78 L.Ed. at 153. *See Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973); *Bailey v. Patterson, supra*, 369 U.S. at 33, 82 S.Ct. at 5, 7 L.Ed.2d at 154.

7. Count IV raises a substantial federal question under both the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. *See* note 4 *supra*. Since it is clear that we have jurisdiction under 28 U.S.C. § 1343(3), which is § 1983's jurisdictional counterpart, it is not

■ Count III alleges that the seven non-general public Board members have conspired to and, in fact have, through the promulgation and enforcement of sections 19.21(r) and (s), substantially restrained, restricted and limited competition in the acquisition, purchase and sale of new cars by non-franchised dealers, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In furtherance of that conspiracy, plaintiffs allege that the aforementioned hearing was scheduled as an attempt to restrain them from conducting their car-dealer business within their three-state trading area. Accepting those allegations as true, it is clear that they raise a substantial federal question. *United States v. General Motors Corp.*, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966). *See Parker v. Brown*, 317 U.S. 341, 349–350, 63 S.Ct. 307, 313, 87 L.Ed. 315, 325 (1943). Accordingly, we have subject matter jurisdiction over count III.

Finally, count II alleges that sections 19.21(r) and (s) are unauthorized and illegal as a matter of state law. Plaintiffs do not contend that the Board is without power to adopt, promulgate and enforce administrative rules and regulations. However, under 63 P.S. § 805(6), any such rule or regulation may not be inconsistent with the Act. Plaintiffs contend that sections 19.21(r) and (s) are "inconsistent" with the Act because nowhere does it authorize the Board to suspend or revoke licenses of new car dealers for the reason that they do not have a written franchise agreement with a manufacturer, importer or distributor. Plaintiffs ask this Court to take jurisdiction over count II under the doctrine of pendent jurisdiction.

Considering the substantiality of plaintiffs' count III antitrust claim, we think it is appropriate to exercise pendent jurisdiction over plaintiffs' count II state claim, as both claims "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966). This conclusion is based upon the realization that a decision on plaintiffs' antitrust claim necessarily encompasses a decision on plaintiffs' state claim, *i. e.*, whether or not the regulations were authorized under the Act.

■ In *Parker v. Brown, supra,* 317 U.S. at 350, 63 S.Ct. at 313, 87 L.Ed. at 326, the Supreme Court held that an anticompetitive marketing program which "derived its authority and its efficacy from the legislative command of the state" did not violate the Sherman Act because that Act was not "intended to restrain state action or official action directed by a state." *Id.* at 350–351, 63 S.Ct. at 313, 87 L.Ed. at 326. Just last term, the Court reexamined *Parker's* state action exemption in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), wherein it was held that certain anticompetitive conduct by lawyers, acting through state and county bar associations, was within the reach of the Sherman Act. In so holding, the Court noted that, in order to find state action in the *Parker v. Brown* sense, the "anticompetitive activities must be compelled by direction of the State acting as a sovereign." *Id.* at 791, 95 S.Ct. at 2015, 44 L.Ed.2d at 587. *See Duke & Company, Inc. v. Foerster*, 521 F.2d 1277 (3d Cir. 1975).[8]

necessary to decide whether jurisdiction could be based upon either 28 U.S.C. § 1343(4) or 28 U.S.C. § 1331(a).

8. In *Duke & Company Inc. v. Foerster,* the Third Circuit held that certain allegedly anticompetitive conduct by three municipal corporations was not exempt from antitrust scrutiny under the *Parker-Goldfarb* state action exception. Concerning the question of whether alleged anticompetitive activities are "compelled by [the] direction of the State acting as a sovereign," the court noted:

We read *Goldfarb* as holding that, absent state authority which demonstrates that it is the intent of the state to restrain competition in a given area, *Parker*-type immunity or exemption may not be extended to anti-competitive government activities. *Such an intent may be demonstrated by explicit language in state statutes, or may be inferred from the nature of the powers and duties given to a particular government entity.* 521 F.2d at 1280 (emphasis added).

In light of *Parker* and *Goldfarb*, it is apparent that plaintiffs' antitrust claim cannot withstand a motion to dismiss for failure to state a claim upon which relief can be granted unless it can traverse the state action defense. As mentioned above, such a motion will require the Court to determine whether defendants' promulgation, adoption and enforcement of sections 19.21(r) and (s) is activity compelled by the direction of the state acting as a sovereign. If we decide that the activity was compelled, then, *a fortiori*, sections 19.21(r) and (s) were authorized by the Act as a matter of state law. Likewise, if the activity was not compelled, then those sections were not authorized by the Act. Accordingly, the Court will exercise its discretion and take pendent jurisdiction over count II.

An appropriate Order will be entered.

In other words, a state agency may be shielded from antitrust liability if their statutory authority either explicitly or implicitly mandates or

permits the alleged anticompetitive activities. *Id.* at 1281.