**CITY OF LAFAYETTE, LOUISIANA, and City of Plaquemine, Louisiana, Plaintiffs-Appellees,**

v.

**LOUISIANA POWER & LIGHT COMPANY, Defendant-Appellant.**

No. 75–1909.

United States Court of Appeals, Fifth Circuit.

May 27, 1976.

Andrew P. Carter, William T. Tete, New Orleans, La., for defendants-appellants.

Tom F. Phillips, Baton Rouge, La., for Gulf States Utilities Co.

Jerome A. Hochberg, Robert C. McDiarmid, Washington, D. C., Robert E. Winn, New Orleans, La., for plaintiffs-appellees.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge.

The sole question in this appeal is whether the actions of a city are automatically outside the scope of the federal antitrust laws. Answering in the negative, we reverse the decision below and remand for further proceedings.

I

A complaint filed on July 24, 1973, by the cities of Lafayette and Plaquemine, Louisiana (the Cities), alleged that appellant Louisiana Power & Light Company (Power & Light) and three other privately owned utilities had violated Sections 1 and 2 of the Sherman Act.[1] The allegations of this complaint are not involved in the present appeal. In its amended counterclaim, Power & Light charged the Cities with having themselves violated the federal antitrust laws in several respects. These allegations can be summarized as follows: (a) that the Cities were conducting sham litigation in order to delay or prevent Power & Light's construction of a nuclear power plant; (b) that anticompetitive covenants were included in the Cities' debentures;[2] (c) that the Cities had conspired with other parties to extend the provision of power to certain service areas beyond the time periods allowed by state law; (d) that the city of

---

1. 15 U.S.C. Sections 1, 2.

2. These covenants were described as "covenants to exclude all competition in the provision of electric power and energy within [the plaintiffs'] municipal boundaries." Trial Record, at p. 14. The specific nature of the alleged covenants cannot be determined from the record before this Court.

Plaquemine was requiring customers outside its city limits to purchase electricity from the city in order to obtain gas and water. All of these actions were alleged to violate Sections 1 and 2 of the Sherman Act. The "tie-in" of electricity to gas and water was alleged to violate Section 3 of the Clayton Act,[3] as well. In its order of February 28, 1975, the trial court dismissed the entire counterclaim. While noting its reluctance to exempt an enterprise which was "clearly a business activity" from the antitrust laws, the court held that the plaintiffs' status as cities was sufficient to bring all their conduct within the "state action" exemption as announced in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and as interpreted by this Court in *Saenz v. University Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973). Following the entry of final judgment dismissing Power & Light's counterclaim on March 13, 1975, this appeal was taken.

## II

In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Supreme Court has defined the extent to which state governmental entities are exempt from the antitrust laws. The earlier case was a suit to enjoin the enforcement of an agricultural marketing program which had been established by a California statute. Noting that the program "derived its authority and its efficacy from the legislative command of the state . . .", 317 U.S. at 350, 63 S.Ct. at 313, 87 L.Ed. at 326, the Court held that the defendants' conduct was beyond the reach of the Sherman Act.[4] The Court could "find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature," *id.* at 350–51, 63 S.Ct. at 313, 87 L.Ed. at 326. By legislative command, the state had adopted an anticompetitive program and prescribed the terms of its operation. Violations were punishable under the state's penal code. In the Court's view, a restraint which the state, "as sovereign, imposed . . . as an act of government . . .", could not be made the basis for Sherman Act liability. *Id.* 317 U.S. at 352, 63 S.Ct. at 314, 87 L.Ed. at 327.

The trial court in the present case acted without the benefit of the Supreme Court's only major post-*Parker* explication of the "state action" doctrine. In *Goldfarb, supra*, the High Court was faced with a Sherman Act challenge to minimum fee schedules published by a county bar association and enforced by the Virginia State Bar. The state bar was a state agency by law, *id.* 421 U.S. at 789–90, 95 S.Ct. at 2014–2015, 44 L.Ed.2d at 586–587, and both lower courts in *Goldfarb* had held that the bar qualified for the "state action" exemption.[5] Without dissent, the Supreme Court rejected this contention. Although the state legislature had authorized the Supreme Court of Virginia to regulate the practice of law, *id.*, at 788, 95 S.Ct. at 2014, 44 L.Ed.2d at 585, that court had taken no action to fix lawyers' fees, *id.* 421 U.S. at 789, 95 S.Ct. at 2014, 44 L.Ed.2d at 586. Nor was there any state statute which directed members of the bar to establish minimum fee schedules. Therefore, the state bar's participation in price

---

3. 15 U.S.C. Section 14.

4. The Court was willing to assume that the alleged activities would be illegal if carried out by private persons. 317 U.S. at 350, 63 S.Ct. at 313, 87 L.Ed. at 325.

5. In contrast to the state bar, the county bar was a private association which was not a state agency by statute and which received no active state supervision. The district court, 355 F.Supp. 491 (E.D.Va.1973), held that the county bar was subject to the antitrust laws. The Court of Appeals, 497 F.2d 1 (4th Cir. 1974), agreed that the county bar was not covered by the "state action" exemption. However, its activities were seen as falling within a "learned profession" exemption to the Sherman Act, and as having an insufficient impact upon interstate commerce. Since the county bar, unlike the state bar in *Goldfarb*, and unlike the Cities in the present case, was not a governmental entity, the Supreme Court's disposition of its contentions will not be discussed here.

fixing failed to satisfy the "threshold inquiry" under *Parker*, i. e., "whether the activity is required by the State acting as sovereign", *id.* at 790, 95 S.Ct. at 2015, 44 L.Ed.2d at 587.

▮ Taken together, these two controlling precedents require the following analysis. A subordinate state governmental body [6] is not *ipso facto* exempt from the operation of the antitrust laws. Rather, a district court must ask whether the state legislature contemplated a certain type of anticompetitive restraint. In our opinion, though, it is not necessary to point to an express statutory mandate for each act which is alleged to violate the antitrust laws. It will suffice if the challenged activity was clearly within the legislative intent.[7] Thus, a trial judge may ascertain, from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of. On the other hand, as in *Goldfarb*, the connection between a legislative grant of power and the subordinate entity's asserted use of that power may be too tenuous to permit the conclusion that the entity's intended scope of activity encompassed such conduct. Whether a governmental body's actions are comprehended within the powers granted to it by the legislature is, of course, a determination which can be made only under the specific facts in each case.[8] A district judge's inquiry on this point should be broad enough

---

**6.** Plaintiffs would have us equate cities and states for purposes of determining "state action". No authority is cited for this proposition, and the only appellate decision directly on point has resolved this issue against plaintiffs. See *Duke & Co. v. Foerster*, 521 F.2d 1277 (3d Cir. 1975). Moreover, it can scarcely be said that, as a general proposition, cities are automatically entitled to whatever legal protections the state itself can claim. Thus, for example, cities, counties, and other state political subdivisions are not considered "the state" for purposes of Eleventh Amendment immunity. See *Edelman v. Jordan*, 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Fay v. Fitzgerald*, 478 F.2d 181, 184 n. 3 (2d Cir. 1973); *Markham v. City of Newport News*, 292 F.2d 711, 716–17 (4th Cir. 1961).

**7.** The opinion in *Goldfarb* does not support defendant's claim that every alleged anticompetitive activity must be specifically approved by the legislature. Thus, the *Goldfarb* Court would apparently have found an exemption if the Supreme Court of Virginia, acting within the intended scope of its legislative grant, had established minimum fees. See 421 U.S. at 788–91, 95 S.Ct. at 2014–2015, 44 L.Ed.2d at 585–587. See also note 8, *infra*.

**8.** Our resolution of these general issues is in accord with that of the Third Circuit in *Duke & Co. v. Foerster, supra*, 521 F.2d at 1279–80. We have carefully studied the authorities cited by plaintiffs and have found nothing that directly contradicts the position which we take in this case. Unlike *Duke & Co.* and the present case, none of these decisions dealt with municipalities. Almost all of them are pre-*Goldfarb*. To the extent that *State of New Mexico v. American Petrofina*, 501 F.2d 363 (9th Cir. 1974) might be read as extending the "state action" exemption to lower governmental bodies' activities which were not contemplated by the legislature, we must regard it as in conflict with the Supreme Court's later decision in *Goldfarb*.

Brief mention should be made of plaintiffs' argument that a decision such as this will lead to undesirable variations in the application of the antitrust laws, since the governmental activities subject to the *Parker-Goldfarb* exemption will differ from state to state. We regard this as an inevitable result of the emphasis in *Parker* and *Goldfarb* upon the scope of legislative intent. For instance, the *Goldfarb* Court made it clear that a statute specifically establishing minimum fee schedules would lead to a "state action" umbrella. 421 U.S. at 790, 95 S.Ct. at 2015, 44 L.Ed.2d at 587. Such an emphasis upon what state laws provide will necessarily lead to variations, dependent upon the differing wills of state legislatures.

Plaintiffs also draw our attention to the dicta in *Goldfarb* which suggest that the Supreme Court of Virginia could, without new statutory authority, impose minimum fee schedules by means of court rules. *Id.* at 788–91, 95 S.Ct. at 2014–2015, 44 L.Ed.2d at 585–587. Our reading of *Goldfarb* is that such rule-making would lead to a "state action" exemption only if the state court's rules fell within the intended scope of its legislative authority "to regulate the practice of law", *id.* 421 U.S. at 788, 95 S.Ct. at 2014, 44 L.Ed.2d at 586.

As a final point, we cannot accept defendant's invitation to import the discredited proprietary-governmental distinction into this area of the law. This contention is unsupported by authority and is irrelevant under *Parker* and *Goldfarb*, which look only to the scope of the legislative action and not the "proprietary" or "governmental" nature of the subordinate governmental body's conduct.

to include all evidence which might show the scope of legislative intent.[9]

## III

■ The Cities argue that a decision adverse to them would necessarily overrule this Court's prior opinion in *Saenz v. University Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973). We are reminded of the general rule that one panel cannot overrule the holding of a previous panel of the same court. See *United States v. Automobile Club Ins. Co.*, 522 F.2d 1, 3 (5th Cir. 1975). However, we do not regard our decision as irreconcilably inconsistent with that in *Saenz*. The complaint in that case alleged that the director of a state slide rule contest induced a state agency to define its regulations so as to exclude the plaintiff's slide rules from use in the contest. This action allegedly resulted from an unspecified economic tie between the director and a slide rule manufacturer which competed with plaintiff. As the panel noted, *id.* at 1028, the charge of an economic relationship between the director and the rival manufacturer was entitled to no weight, since plaintiff could not simply rely on his pleadings in the face of opposing affidavits. Stripped of the unsupported charge of financial influence, the allegations in *Saenz* must be seen as having stated no more than that (a) the director, "clearly acting within the scope of his duties", *id* at 1028, determined that plaintiff's slide rule was not a "standard slide rule" which could be employed in the contest, and (b) the agency ratified that decision. It can scarcely be doubted that the agency's actions were within the contemplated scope of the powers conferred upon the state university system (of which the agency was a part) by the Texas legislature. The *Parker-Goldfarb* principle, as we have interpreted it, would clearly exempt such actions from the Sherman Act. We are, therefore, unpersuaded that there is any necessary conflict between our decision and the panel opinion in *Saenz*.

■ Even accepting *arguendo* the contention that *Saenz* automatically excludes subordinate state governmental bodies from the antitrust laws, we must still reject the notion that only an en banc Court could reach the result which we reach today. It is settled that the rule against inconsistent panel decisions has no application when intervening Supreme Court precedent dictates a departure from a prior panel's holding. See *Davis v. Estelle*, 5th Cir., 529 F.2d 437, at p. 441 (1976). This is precisely the situation here. The argument that lower state entities are automatically exempt from the Sherman Act has been laid to rest by the Supreme Court in *Goldfarb*. The test now is whether the challenged action is the type of activity which the legislature intended the governmental body to perform. This principle has already been tacitly recognized by one post-*Goldfarb* panel of this Court. Faced with an antitrust challenge to a city council's rate-making practices, the panel in *Jeffrey v. Southwestern Bell*, 518 F.2d 1129 (5th Cir. 1975) was not content merely to note that the actor was a municipal body. Rather, the Court went on to ascertain that the state legislature had expressly delegated rate-making authority to municipalities, *id.* at 1133. The legislature had also specifically charged municipalities with the duty of insuring a fair rate structure. The *Jeffrey* panel was unwilling to assume that the city council was doing anything other than carrying out this legislatively mandated duty when it took the actions complained of. *Id.* It will be observed that this is precisely the type of inquiry which our reading of *Goldfarb* and *Parker* would require. In our view, *Jeffrey* at least implicitly adopted the analysis which we have expressly employed today. The *Jeffrey* opinion, then, lends further support to our conclusion that, in the wake of *Goldfarb*, plaintiffs' interpretation of *Saenz* cannot be considered the law of this circuit.[10]

---

**9.** Therefore, we reject the capricious limitation suggested by counsel at oral argument, which would restrict a court's inquiry to the pertinent statutes themselves.

**10.** We are also unpersuaded by plaintiffs' reliance upon *Alabama Power Co. v. Alabama Electric Cooperative, Inc.*, 394 F.2d 672 (5th Cir.), *cert. denied*, 393 U.S. 1000, 89 S.Ct. 488,

## IV

To summarize, we conclude that the district court erred in holding the Cities' actions to be automatically beyond the reach of the federal antitrust laws. Upon remand, the court must determine whether the activities alleged fall within the intended scope of the powers granted to the Cities by the legislature. In their briefs on appeal, the Cities have provided copies of statutes which allegedly comprehend the acts involved in Power & Light's counterclaim. These are materials which should be submitted to the trial court in the first instance, together with all other relevant evidence.

REVERSED and REMANDED, with directions.

21 L.Ed.2d 465 (1968). The various exemptions perceived by the *Alabama Power* panel were expressly derived from a judicial construction of the Rural Electrification Act in an antitrust context. No such problem of reconciling various federal statutes with one another is presented in the current appeal.