**LIMECO, INC., Plaintiff,**

v.

**The DIVISION OF LIME OF the MISSISSIPPI DEPARTMENT OF AGRICULTURE AND COMMERCE and Jim Buck Ross, Commissioner of Agriculture and Commerce of the State of Mississippi and His Successors in Office, Defendants.**

No. GC 81–162–WK–O.

United States District Court,
N. D. Mississippi,
Greenville Division.

Sept. 15, 1982.

Michael Farrell, Jackson, Miss., for plaintiff.

Robert E. Sanders, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM ORDER

KEADY, Chief Judge.

In this Sherman Antitrust action, plaintiff LimeCo, Inc., sues defendants The Division of Lime of the Mississippi Department of Agriculture and Commerce and Jim Buck Ross, Commissioner of Agriculture and Commerce of the State of Mississippi, for injunctive and monetary relief from the state's alleged predatory trade practices in the agricultural lime business. The court has before it plaintiff's motion to strike affirmative defenses of "state action" exemption from the federal antitrust laws and sovereign immunity.

## I. STATE ACTION EXEMPTION

In their answer to the allegation that due to defendants' "unfair and predatory pricing and other unfair trade practices," (complaint ¶ 19) plaintiff has suffered damages in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., defendants assert they are exempt from suit under the Act because the alleged violation is the result of state action. The precise question here presented is whether a state which engages in competition in the market place, without regulating the industry or granting a monopoly, is engaging in "state action" that is exempt from the Sherman Act.

A. *Implied exemption.*

■ Although the Sherman Act does not expressly contain a state action exemption, the Supreme Court in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), first implied this exemption by concluding:

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutional-

ly subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

317 U.S. at 350–51, 63 S.Ct. at 313, 87 L.Ed. at 326. Because the state action exemption is implied, it is to be narrowly construed and applied only when its justifications outweigh the heavy presumption against such exemptions. *See, e.g., Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 231, 99 S.Ct. 1067, 1083, 59 L.Ed.2d 261, 280 (1979) (exemptions from antitrust laws to be narrowly construed); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 787, 95 S.Ct. 2004, 2013, 44 L.Ed.2d 572, 585 (1975) (heavy presumption against implicit exemptions). For this reason, the application of the state action exemption cannot be applied to the well-pled facts of this case without close scrutiny.

■ We reject at the outset defendants' argument of *per se* exemption for states regardless of the nature of their actions. The Supreme Court considered and expressly rejected this expansive contention in *City of Lafayette v. Louisiana Power and Light Co.,* 435 U.S. 389, 408, 411, 98 S.Ct. 1123, 1134, 1136, 55 L.Ed.2d 364, 380, 382 (1978), in which the court held:

> Plainly petitioners are in error in arguing that Parker held that all governmental entities, whether state agencies or subdivisions of a State, are simply by reason of their status as such, exempt from the antitrust laws.

> . . . . .

> These decisions require rejection of petitioners' proposition that their status as such automatically ·affords governmental entities the "state action" exemption.

*Id.*[1]

B. *Interests of Federalism.*

■ As stated in *City of Lafayette, supra, Parker limited* the state action exemp-

1. Although the Ninth Circuit in *State of New Mexico v. American Petrofina,* 501 F.2d 363 (9 Cir. 1974), held that a state once found to be a state is not covered by the Sherman Act, 501 F.2d at 371, the Supreme Court in *Lafayette* impliedly overruled such an expansive ruling. The Fifth Circuit's opinion in *Lafayette* also took a position directly contrary to the Ninth Circuit by holding a "subordinate state governmental body is not *ipso facto* exempt from the

tion to official action directed by the state. 435 U.S. at 411–12, 98 S.Ct. at 1136, 55 L.Ed.2d at 382. This restriction upon such an exemption "arises from the basis for the 'state action' doctrine—that given our 'dual system of government in which, under the Constitution, the states are *sovereign*, . . .' a congressional purpose to subject to antitrust control the states' acts of government will not lightly be inferred." *Id.* (Emphasis added), quoting *Parker v. Brown, supra.* Otherwise stated, this judicially established exemption was created solely to further the interests of federalism. If such interests do not validly exist—if the governmental entity is not acting in its sovereign capacity— the purpose of the state action exemption is absent and the exemption will not be applied to the activity under review. *See Lafayette, supra,* 435 U.S. at 413, 98 S.Ct. at 1136–1137, 55 L.Ed.2d at 383 (exemption denied city not exercising sovereign power of state); *Goldfarb, supra,* (threshold question is whether state acted as sovereign). These Supreme Court cases, though not dealing with the exact question presented here, are nonetheless instructive of the recent trend toward a restrictive interpretation of the state action exemption. *See also Community Communications Co. v. City of Boulder, Colo.,* —— U.S. ——, ——, 102 S.Ct. 835, 843, 70 L.Ed.2d 810, 822 (1982) (municipality not exempt absent action pursuant to clearly articulated and affirmatively expressed state policy); *California Retail Liquor Dealers Ass'n. v. Mid-Cal Aluminum,* 445 U.S. 97, 105–06, 100 S.Ct. 937, 943–944, 63 L.Ed.2d 233, 243 (1980) (to be exempt, state action must be actively supervised by state, not just commanded by it); *Cantor v. Detroit Edison,* 428 U.S. 579, 598, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141, 1154 (1976) (state approval of tariff insufficient basis for implying exemption).

### C. State Acting as Competitor.

 Because the state action exemption is based on the interests of federalism, it is axiomatic that action taken by a governmental entity in a capacity other than as operation of the antitrust laws." 532 F.2d 431,

sovereign is not to have exempt status. Plaintiff asserts that action by a state as a competitor in the market place, and not as a regulator or grantor of a monopoly, falls outside the state's role as sovereign. We agree. It has long been recognized that when governmental entities enter commercial forums they do so as ordinary business entities, not sovereigns. *See, e.g., United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92, 111, n. 23 (1977) (state acts as individual when contracting to borrow money, not as sovereign); *Horowitz v. United States,* 267 U.S. 458, 459, 461, 45 S.Ct. 344, 345, 69 L.Ed.2d 736, 737–38 (1925) (government's character as contractor and sovereign cannot be fused). Nor is this distinction limited to nonconstitutional areas of the law. The Supreme Court has recognized the distinction in two recent Commerce Clause cases. *See Reeves, Inc. v. State,* 447 U.S. 429, 436, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244, 251 (1980) (distinction between states as market participants and states as market regulators "makes good sense and sound law"); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806–808, 96 S.Ct. 2488, 2496–2497, 49 L.Ed.2d 220, 229–31 (1976) (state which enters market as participant rather than regulator not in violation of commerce clause). Although under the Commerce Clause the distinction frees the state from liability, part of the Supreme Court's rationale was that in other areas the state's proprietary activities are *burdened* by the same restrictions imposed on private market competitors. Evenhandedness, the Court reasoned, dictates the same distinction should *free* the states under the Commerce Clause. In this regard, the Court in *Reeves* specifically mentioned *Lafayette, supra.* We perceive no reason this distinction should not apply with equal effect in the antitrust law area. Until now, every Supreme Court case extending an exemption under the *Parker* rationale has involved state regulation of an industry or the grant of a monopoly. Our research reveals no reported federal decisions which

434 (5 Cir. 1976).

have considered whether to allow an antitrust exemption where the state enters the marketplace as a competitor. The issue thus appears to be one of first impression with the federal judiciary. We, therefore, hold that whenever the state acts solely as a competitor, the state action exemption cannot apply because no interests of federalism are present, and the state's activity is subject to antitrust regulation. We turn to the activity of the State of Mississippi at issue in this action.

### D. Mississippi's Division of Lime.

█ In 1943, the Mississippi State Legislature passed enabling legislation creating a Division of Lime within the Mississippi Department of Agriculture and Commerce. That legislation, now codified as Miss. Code Ann. § 69–1–31 to § 69–1–41 (Supp. 1981). Section 69–1–39 provides:

> The crushed agricultural limestone from these stations provided for in § 69–1–37 shall be sold to the people of the State of Mississippi at the actual cost of all expenses connected to the crushing, screening, and loading of same upon freight cars, automobile trucks, or wagons, except that in no cases shall farmers be charged more than actual cost per ton for such limestone. None of the crushed lime shall be sold out of the state.

This statute should be viewed against the following factual background. Mississippi has three known strata of abundant limestone deposits located in different sections of the state. Although the mining of lime is not a complicated process—it involves only clearing the overburden of topsoil so as to permit strip mining—private enterprise was relatively slow in meeting the agricultural demand for the mined product prior to 1943. The few small plants which were in operation had only limited delivery to local customers, and consumers distant from plants chiefly relied on supplies imported from out of state. The State Division of

Lime established its first successful lime plant in 1945 near West Point in Clay County, its second plant in 1951 near Macon in Noxubee County, and a third plant in 1976 in Waynesboro in Wayne County. In the 36 years of the Division's efforts in lime production, the annual output of sales has increased from about 50,000 tons to over 400,000 tons in 1982. The Division of Lime was in 1981 reported to be the fifteenth largest producer of agricultural lime in the nation. Private companies producing lime in Mississippi consist of plaintiff and eight other companies; all are of relatively small size and all except one, mine to sell lime for agricultural uses.

The Mississippi enactment did not set up a statutory scheme for the regulation of the lime industry, nor did it create a monopoly. Mississippi, by its statutory law, merely became a participant in the marketplace in the same manner as the operator of a private business. According to the express terms of the Act, the purpose of the Division of Lime is to "supply ... crushed limestone to the farmers of the state for agricultural purposes...." § 69–1–33. Although pursuing a laudable purpose, the state has not acted "pursuant to state policy to displace competition with regulation or monopoly public service." *Lafayette, supra,* 435 U.S. at 413, 98 S.Ct. at 1136–1137, 55 L.Ed.2d at 383. The state clearly is acting as one among a number of competitors in the lime industry and as such cannot invoke the principles of federalism so as to procure exemption from Sherman Act coverage. The mere finding of no exemption, of course, does not require holding that the conduct complained of is illegal. *Group Life & Health Ins. Co. v. Royal Drug Co., supra.* That is an issue not now before us.

### II. SOVEREIGN IMMUNITY

█ Defendants also assert plaintiff's claim is barred by the eleventh amendment to the Constitution of the United States.[2]

---

**2.** The eleventh amendment states:

The judicial power of the United States shall *not be construed to extend to any suit in law or equity, commenced or prosecuted against* one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

872

As plaintiff points out, however, the eleventh amendment does not shield state officials acting in their official capacities from injunctive relief. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Therefore, the defense of sovereign immunity to suit for injunctive relief is insufficient as a matter of law. Because we grant plaintiff's motion to bifurcate the trial as to liability and damages, we do not deem it necessary to decide the sufficiency of the defense of sovereign immunity as it pertains to monetary relief from the state and its officers under the antitrust laws.

Therefore, it is

ORDERED

1. That plaintiff's motion to strike the defense of state action exemption from the application of the Sherman Act is hereby sustained.

2. That plaintiff's motion to strike the defense of sovereign immunity under the eleventh amendment to the Constitution is hereby sustained only as it applies to Commissioner Ross in his official capacity for injunctive relief.

3. That the issue of liability is bifurcated, and the matter of relief is reserved for subsequent trial.

4. Because the district court is of the opinion that the above ruling involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the ruling may materially advance the ultimate termination of the litigation, we grant the parties leave to apply for an interlocutory appeal. In the event the Court of Appeals allows an interlocutory appeal from this order pursuant to 28 U.S.C. § 1292(4)(b), all proceedings in the district court shall be stayed until final outcome of the appeal.

