MILLER & SON PAVING, INC.

v.

WRIGHTSTOWN TOWNSHIP
CIVIC ASSN. et al.

Civ. A. No. 77–2698.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Jan. 11, 1978.

Edwin P. Rome, Philadelphia, Pa., for plaintiff.

Melvin A. Schwarz, Robert J. Sugarman, Leonard Barrack, Gerald J. Rodos, Paul J. McMahon, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

The plaintiff in this case, Miller & Son Paving, Inc. (Miller), is engaged in the business of stone quarrying in Wrightstown Township, Pennsylvania. Miller brought this suit against Wrightstown Township Civic Association and certain individual residents of the Township. Miller charges that all defendants engaged in a concerted effort to terminate the operation of Miller's business in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (count I), and sections 1, 2, and 6 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3) and 1986 (count II). Presently before the court are motions by all defendants to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the purpose of these motions, I accept all allegations of the complaint as true. *Kurek v. Pleasure Driveway & Park District,* 557 F.2d 580, 584 (7th Cir. 1977). A summary of those allegations follows.

Miller has owned and quarried a 45 acre tract of land in Wrightstown Township since 1959. This land has been and is presently zoned Q–A Quarry-Agriculture. In 1973, Miller purchased 12 acres of land adjoining the original 45 acre plot. This land is presently and was at the time of purchase zoned R–2 Residential Agriculture.

In September, 1974, the Township Supervisors, at the initiation of defendant Perry, whose residence borders on Miller's quarry operation, "issued an order directing Miller to cease and desist certain activities in connection with quarrying within the 45 acre plot." That order was appealed to the Township's Zoning Hearing Board where the order of the Supervisors was upheld in part and dismissed in part. Both Miller and the Township appealed the order of the Hearing Board and that appeal is presently pending before the Court of Common Pleas of Bucks County, Pennsylvania.

In December, 1974, Miller filed a petition with the Supervisors to change the zoning classification of the 12 acre plot from R–2 Residential-Agriculture to Q–A Quarry-Agriculture. In the course of hearings that were held on Miller's petition, the Supervisors directed Miller to negotiate with the other defendants and stated that they would rezone only on conditions acceptable to the civic association and the other individual defendants. The negotiations

proved fruitless and in June of 1977, the supervisors issued an order denying Miller's petition for rezoning.

In addition to these activities regarding zoning regulations, Miller charges that the defendants combined for the purpose of terminating his business, by filing an appeal with the Pennsylvania Environmental Hearing Board from the grant to Miller by the Department of Environmental Resources of a surface mining permit and mine drainage permit. The complaint states that although the Supervisors initiated the appeal and the Township paid all the expenses, "the Supervisors delegated to the Association and to the other defendants the conduct of the appeal."

As a result of the activities of the defendants, Miller alleges that he has been unable to quarry in the 12 acre tract and "has been prevented from selling stone and stone products in Pennsylvania and New Jersey." Thus, Miller claims that the flow of stone products and stone in Interstate Commerce has been restrained and that competition between Miller and other quarry operators has been suppressed.

Because I find that the activities alleged in the complaint are not of the type that the Sherman Act or the Civil Rights Act of 1871 were designed to prohibit, I will dismiss the complaint for failure to state a claim upon which relief can be granted.

### Antitrust Claim

▮▮▮ Although the language of the Sherman Act is very broad, it has long been settled that Congress intended its proscriptions to be limited to "commercial transactions". *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 492–93, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The political nature of the defendant's activities in this case is, therefore, fatal to the plaintiff's antitrust claim.

In this regard, I find instructive the case of *Marjorie Webster Junior College v. Middle States Association of Colleges and Secondary Schools, Inc.,* 139 U.S.App.D.C. 217, 432 F.2d 650 *cert. denied* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). The plaintiff in that case was refused consideration

for accreditation by the defendant because the college was operated on a for profit basis. The court dismissed the complaint finding that the non-commercial nature of the defendant's activities made the Sherman Act inapplicable. The plaintiff had urged that since the plaintiff was engaged in "trade", any restraint on that "trade" was actionable under the Sherman Act. The court disagreed and stated that "the proscriptions of the Sherman Act were 'tailored . . . for the business world' not for the non-commercial aspects of the liberal arts and the learned professions." Id., 139 U.S.App.D.C. at 221, 432 F.2d at 654 *quoting Eastern R. R. Presidents Conference v. Noerr Motor Freights, Inc.,* 365 U.S. 127, 141, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *See also Donnelly v. Boston College,* 558 F.2d 634 (1st Cir. 1977).

In the present case, there is no allegation that there is any commercial aspect to the defendant's actions. The plaintiff claims, however, that the effect of the defendant's activities is to reduce the viability of the plaintiff as a competitor in the interstate market for stone and stone products. This argument is essentially the same as the one rejected by the court in *Marjorie Webster.* The plaintiff claims that it is engaged in "trade" and therefore any damage to the plaintiff's business is a restraint on trade. I cannot accept this reasoning, however, because it overlooks the fact that the conduct alleged is simply not the kind that the Sherman Act was designed to regulate. As the Supreme Court stated in *Noerr,* the activities of the defendants here

bear very little if any resemblance to the combinations normally held violative of the Sherman Act, combinations ordinarily characterized by an express or implied agreement or understanding that the participants will jointly give up their trade freedom, or help one another take away the trade freedom of others through the use of such devices as price fixing agreements, boycotts, market-division agreements and other similar arrangements.

365 U.S. at 136, 81 S.Ct. at 529.

In *Noerr,* the Sherman Act was held not to apply to attempts to influence the enforcement or passage of laws even where

"[the] sole purpose in seeking to influence the passage and enforcement of laws was to destroy . . . competitors". *Id.* at 138, 81 S.Ct. at 530. The present case is an even stronger one for not applying the antitrust laws since the defendants have no direct interest in eliminating competition in the quarrying business. Thus, no anticompetitive purpose can be attributed to the defendants.

■ The plaintiff argues that the Sherman Act becomes applicable to political activity when it is alleged that government is a part of the conspiracy, and cites *Whitworth v. Perkins,* 559 F.2d 378 (5th Cir. 1977); *Kurek v. Pleasure Driveway and Park District,* 557 F.2d 580 (7th Cir. 1977); *Duke & Co. v. Foerster,* 521 F.2d 1277 (3rd Cir. 1975). The fact that a conspiracy is alleged, however, does not change the essential non-commercial character of the activities alleged by the defendant. The cases cited by the plaintiff are inapplicable because they deal with government activities in the business rather than the political arena. "The proscriptions of the [Sherman] Act, tailored as they are for the business world, are not all appropriate for application in the political arena." *Noerr, supra,* 365 U.S. at 141, 81 S.Ct. at 531. Consequently, I conclude that the plaintiff's complaint does not state a cause of action under the antitrust laws.

### The Civil Rights Claim

Count II of plaintiff's complaint alleges that the activities of the defendants in this zoning dispute amount to a violation of Miller's constitutional rights cognizable under the Civil Rights Act of 1871 and directly under the fourteenth amendment. I disagree and, therefore, dismiss Count II for failure to state a claim upon which relief can be granted.

■ Although the complaint only states in broad, conclusory language that Miller had been deprived "rights, privileges and immunities under law", the gravamen of the § 1983 claim is apparently that plaintiff has a property interest in its quarry operation and that the defendants have de-

prived Miller of the full use of that property. Because the property interest is protected by the fourteenth amendment, the plaintiff asserts that the complaint states a cause of action under § 1983. The fallacy of this argument is that not every deprivation of property is a constitutional violation. Only when an individual has been deprived of property without due process of law has he been injured in a constitutional sense. U.S.Const. Amend. XIV. The complaint does not specify what due process rights Miller has been denied or even that there was a denial of due process. The complaint is, therefore, defective since Civil Rights actions in this circuit must be pled with specificity. *Rotolo v. City of Charlerois,* 532 F.2d 920 (3rd Cir. 1976).

■ Even if I were to overlook the failure of the complaint to specifically articulate the constitutional deprivations for which redress is sought, it is apparent that no cause of action is stated by the facts alleged. The facts alleged are that the Township Supervisors issued a cease and desist order for alleged violations of the township zoning ordinance, that they denied the plaintiff's application for rezoning, that they appealed the granting of necessary permits to the plaintiff by the Pennsylvania Department of Environmental Resources, and that all of these actions were taken pursuant to a "conspiracy" between all of the defendants. The "conspiracy" apparently consisted of an agreement on the desirability of taking the actions outlined above. I fail to see how such an agreement can be construed as a violation of anyone's constitutional rights.

■ The factual allegations reveal that what is involved in this case amounts to nothing more than a local zoning dispute. A federal district court may not "sit as a super zoning board with power to act *de novo,* but rather has, in the absence of alleged racial or economic discrimination, a limited role of review." *Steel Hill Development, Inc. v. Town of Sanbornton,* 469 F.2d 956, 960 (1st Cir. 1972) (footnote omitted). The only question I am empowered to re-

view is "whether the action of the zoning commission [supervisors] is arbitrary and capricious, having no substantial relation to the general welfare." *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) *cert. denied* 419 U.S. 837, 94 S.Ct. 1625, 40 L.Ed.2d 119 (1974). The complaint is devoid of any allegation of arbitrariness. Consequently, I am without the power to review the decisions of the supervisors. In any event, the fact that the plaintiff has had numerous hearings before the supervisors and the Township's Zoning Hearing Board and has appeals pending before the Common Pleas Court of Bucks County shows that he has been afforded ample procedural due process.

As to the plaintiff's assertion of a cause of action under 42 U.S.C. §§ 1985(3) & 1986, I find the lack of any allegation of class based discrimination fatal to that claim. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Waits v. McGowan,* 516 F.2d 203, 208 (3rd Cir. 1975).

In addition to the reasons stated above, the claim against Wrightstown Township based on the Civil Rights Act of 1871 must be dismissed because the Township is not a person within the meaning of the Act. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Because I find that nothing alleged in the complaint amounts to a violation of the plaintiff's constitutional rights, I need not decide if a cause of action exists against the Township directly under the fourteenth amendment. Compare *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D.Pa.1977) (Higginbotham, J.) *with Jones v. McElroy,* 429 F.Supp. 848 (E.D.Pa.1977) (Luongo, J.).

I, likewise, express no opinion on whether or not the Supervisors are protected by absolute immunity. *See Tenney v. Brandhove,* 341 U.S. 366, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968).

*Conclusion*

In dismissing this complaint, I am aware that dismissal under Rule 12(b)(6) should only be ordered when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Nevertheless, I am convinced that justice is best served by a dismissal in this case because of the "danger that the mere pendency of the action will chill the exercise of First Amendment rights . . ." *Franchise Realty v. San Francisco Local Joint Executive Board* 542 F.2d 1076, 1083 (9th Cir. 1976). The allegations of the complaint amount to no more than a charge that certain citizens of Wrightstown Township petitioned the Township Supervisors to enforce the local zoning laws against the plaintiff and the supervisors did so. The result has been that the Township and the plaintiff have become involved in two separate state court actions which are still pending. I see no reason to add leverage to Miller's position in the state court by continuing to entertain a groundless federal claim.