FEDERAL PRESCRIPTION SERVICE, INC., et al., Plaintiffs,

v.

AMERICAN PHARMACEUTICAL ASSOCIATION et al., Defendants.

Civ. A. No. 77–1163.

United States District Court, District of Columbia.

March 27, 1979.

George S. Leonard, Alexandria, Va., for plaintiffs.

Arthur B. Hanson, Washington, D. C., for American Pharmaceutical Ass'n and William S. Apple.

Richard M. Rindler, Washington, D. C., for National Ass'n of Retail Druggists.

Jerry D. Voight, Washington, D. C., James L. Siekmann, Chicago, Ill., for National Assn. of Boards of Pharmacy.

## MEMORANDUM OPINION

GESELL, District Judge.

The National Association of Retail Druggists ("NARD"), one of the defendants in this civil jury antitrust damage action, initially moved for summary judgment more than nine months ago. At that time, the Court, pursuant to Fed.R.Civ.P. 56(f), delayed its consideration of the motion so that plaintiffs could have full opportunity to perfect their claims by discovery prior to response. Plaintiffs then searched NARD's documents, deposed witnesses, and elicited answers to interrogatories. Now on the full record as explained by affidavits and after further briefs have been filed and oral argument held, the matter is ripe for decision.

The complaint filed July 6, 1977, alleges a broad conspiracy among various groups and organizations, some defendants in this action and some not, to oppose, prevent and restrain mail service sales of prescription drugs. It is claimed that the conspiracy has "gone beyond advocacy" of the defendants' position and has involved active efforts designed to eliminate mail order competition. Paragraph 14 of the complaint sets out the alleged means of the claimed conspiracy in ten subheadings from (a) through (j).

NARD's motion for summary judgment denies any illegal agreement and urges that its admitted opposition to the sale of prescription drugs by mail never went beyond the area immunized from antitrust proscription by *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (*Noerr*). See *Otter Tail Power Co. v. United States*, 410 U.S. 366, 379–80, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 669–70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Subscription Television, Inc. v. Southern California Theatre Owners Association*, 576 F.2d 230 (9th Cir. 1978); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076 (9th Cir. 1976), cert. denied, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). The *Noerr* doctrine, as developed through the later cases, protects genuine individual or concerted action before legislative bodies, administrative agencies and courts. The doctrine rests upon aspects of the First Amendment to the Constitution and provides an absolute immunity from antitrust liability so long as the activity is "genuine." The immunity applies even if the defendant's ultimate intent is to restrain competition, see *United Mine Workers v. Pennington, supra*, 381 U.S. at 670, 85 S.Ct. 1585; *Noerr, supra*, 365 U.S. at 138–40, 81 S.Ct. 523, and even where an incidental though important effect of the defendant's conduct is to inflict "some direct injury" upon the plaintiff, such as destroying its goodwill among the public and its customers, see *Noerr, supra*, 365 U.S. at 142–44, 81 S.Ct. 523. *Noerr*-like activity,

however, loses its protection when it is not "genuine" or constitutes a "sham." Such is the case when the purpose and possibly the effect of the defendant's conduct is to bar its competitor "from meaningful access" to the relevant governmental body, see *California Motor Transport Co. v. Trucking Unlimited, supra,* 404 U.S. at 512–15, 92 S.Ct. 609, or is to abuse the relevant government body's processes, see *id., i. e.,* use those processes to restrain competition without any genuine intent to present one's position to the pertinent government body.

■ Since NARD's motion is for summary judgment, notice should be taken of the rules that properly govern the award of summary judgment in this variety of antitrust litigation. The fact that antitrust violations are alleged does not vitiate the force of any of the normal summary judgment rules, as the Supreme Court recognized in *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). See also *Merit Motors, Inc. v. Chrysler Corp.,* 187 U.S.App.D.C. 11, 13–15, 569 F.2d 666, 668–69 (1977). Moreover, where, as here, the motion rests in substantial part on the *Noerr* doctrine, it is particularly important that the Court carefully scrutinize the adequacy of plaintiffs' claims. The pendency of a meritless suit touching upon *Noerr*-protected conduct can itself chill the exercise of First Amendment rights. See *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board, supra,* 542 F.2d at 1082–84; *Wilmorite, Inc. v. Eagan Real Estate, Inc.,* 454 F.Supp. 1124, 1137 (N.D.N.Y.1977), *aff'd mem.,* 578 F.2d 1372 (2d Cir. 1978), *cert. denied,* 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978). Here, a substantial *Noerr* showing has been made. Thus, plaintiffs must meet the requirements of Fed.R.Civ.P. 56(e), by demonstrating specific and concrete facts that support their allegations. The Court has already permitted plaintiffs substantial and liberal discovery against NARD; the case has consequently reached such a stage that, if plaintiffs cannot meet their burden under Fed.R.Civ.P. 56(e), forcing NARD to proceed to trial would jeopardize significant constitutional rights.

■ At the outset, plaintiffs acknowledge, as they must, that much of NARD's activities has involved lobbying efforts before Congress and state legislatures concerning pharmacy laws, representations to and appearances before administrative agencies and contact with court proceedings. Not only are all these activities classically within the area protected by *Noerr,* but plaintiffs have pointed to no fact which would even suggest that the activities fell within the "sham" exception to the *Noerr* doctrine. No evidence is offered showing any tactics by NARD involving opposition to or delaying of state licensing or other administrative action and NARD, by affidavit, denies any such conduct. Similarly, plaintiffs have not demonstrated a single instance where NARD has participated in the instigation of baseless and harassing litigation against the interests of mail order pharmacy. Again, NARD by affidavit denies any such participation.

Furthermore, the plaintiffs have not shown, and NARD by affidavit denies, that NARD adopted or enforced a code of ethics relating to the sale of prescription drugs by mail, caused any pharmacy to dispense forged prescriptions by mail, or attempted to make membership in NARD or any other pharmacy organization a precondition of pharmacy employment or of higher state pharmacy ratings. Plaintiffs allege that NARD has ousted from membership pharmacists who own or accept employment in a mail service or discount pharmacy and point to one instance in 1960 where a prescription company did lose its membership in NARD. This instance, however, lacks any appreciable significance. The publicity campaign which was conducted against the same pharmacy by the American Pharmaceutical Association ("APhA"), also a defendant in this case, did not precede, but rather followed NARD's actions by several months. Moreover, prior to its ouster, the pharmacy in question had been advertising its affiliation with NARD and this advertising implicated NARD in the violation of a number of state statutes prohibiting prescription-by-

mail advertising. Finally, NARD by affidavit denies that it ever ousted a pharmacist from membership for the reasons alleged in the complaint.

■ For these reasons, plaintiffs now solely rest their case against NARD upon four circumstances. Plaintiffs maintain that these instances demonstrate that NARD openly participated and conspired with APhA to injure the mail order prescription business. Plaintiffs further contend that none of the circumstances cited involved *Noerr*-protected activity; in other words, that the instances demonstrate a conspiracy with objectives falling outside the mantle of *Noerr*. The four circumstances, as shown by the record, are:

A. In 1960, NARD and APhA actively induced the American Medical Association to adopt a resolution opposing the dispensation of drugs by mail order houses.

B. In 1968, NARD and APhA, through an intensive publicity campaign, persuaded the Pharmaceutical Manufacturers Association ("PMA"), to retract a statement the latter had made in a critique of a Report of the United States Department of Health, Education and Welfare. The statement made by PMA had recommended that the extant legal barriers to prescription drug advertising be removed.

C. In 1972, counsel for NARD and counsel for APhA attended a meeting sponsored by several state pharmaceutical associations. At the meeting was discussed the associations' opposition to various suits which had been initiated by the Pathmark chain of stores challenging existing governmental restrictions on the advertising of prescription drug prices. NARD provided the participants with a list of case precedents, but declined actively to participate any further in connection with the litigations because it perceived the defendants' position to be weak. Indeed, it appears that the NARD and APhA representatives expressed a belief that advertising might not damage the interests of pharmacists as much as some of the other participants assumed.

D. In 1973, NARD joined with APhA to form a Committee on Pharmacy Economic Security ("COPES") to promote and protect the professional and economic interests of pharmacists. The only apparent connection this organization ever had with the issue of mail order pharmacy was when NARD proposed that the issue be considered at one of the organization's meetings. In fact, the topic was never discussed.

(A) and (B) are protected by the *Noerr* doctrine. Plaintiffs contend that *Noerr* does not immunize joint attempts to enlist other organizations with allied interests to rally in a common publicity effort. Plaintiffs misread the law. The *Noerr* case dealt with a publicity campaign involving ostensibly "independent persons and civil groups," *Noerr, supra,* 365 U.S. at 130, 134, 140–42, 81 S.Ct. 523, and the use of "newspaper articles, editorials, magazine articles" and the like, *id.,* 365 U.S. at 142, 81 S.Ct. 523. The evidence here leaves no doubt that (A) and (B) were at least indirect attempts to influence governmental behavior.

(C) most certainly does not fall within the category that encompasses "repetitive lawsuits carrying the hallmark of insubstantial claims and thus . . . within the 'mere sham' exception announced in *Noerr.*" *Otter Tail Power Co. v. United States, supra,* 410 U.S. at 380, 93 S.Ct. at 1031. Indeed, (C) substantially undercuts the force of plaintiffs' claims.

(D) is utterly insignificant.

Nothing else of substance remains in the papers. Accordingly, summary judgment is granted to NARD.