The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF
ADAMS, Plaintiff,

v.

Hal SHROYER, Defendant.

Civ. A. No. 87–K–791.

United States District Court,
D. Colorado.

June 30, 1987.

Michael S. Kaminski, Adams Co. Atty.,
Ronald K. Olson, Deputy Co. Atty., Brigh-
ton, Colo., for plaintiff.

Marvin Dansky, Westminster, Colo., for
defendant.

## MEMORANDUM OPINION
## AND ORDER

KANE, District Judge.

This action, removed from state court, is
a complaint for declaratory relief under
Colo.Rev.Stat. § 13–51–101, *et seq.* The
complaint recites the following allegations:
On January 28, 1985, plaintiff executed a
memorandum of understanding with the
City and County of Denver concerning
eventual construction of a new Denver met-
ropolitan area airport. On April 6, 1987,
plaintiff adopted a resolution imposing cer-
tain county sales and use taxes. The reso-
lution authorized submittal of the sales and
use tax question to Adams County voters
on May 12, 1987.

On May 6, 1987, the plaintiff adopted a
resolution "clarifying and ratifying policies
it has long pursued in again declaring the
location and development of the airport and
the proposed sales tax as matters of offi-

cial concern." Complaint, ¶ XI. Plaintiff also authorized the expenditure of up to $50,000 to disseminate and promote these policies to the Adams County public. *Id.*, ¶ XII. The $50,000 expenditure was purportedly authorized under Colo.Rev.Stat. § 1–45–116.[1] *Id.*, ¶ XVI.

The complaint then recounts defendant's allegedly objectionable actions. Paragraph XIII declares Shroyer "has on numerous occasions in public forums and in the media repeatedly stated that the county has no power to disseminate information as hereinabove alleged." Paragraph XIV relates defendant's statements, both in public fora and to the press, about the county's lack of authority to spend taxpayers' money to advance the official county point of view. The next paragraph of the complaint accuses Shroyer of threatening the county commissioners and their administrative assistants with suit holding them personally liable for the funds depleted in expounding the county's position to the public.

Plaintiff contends defendant's accusations have occasioned "controversy and created uncertainty in the minds of the general public over the expenditure of funds and the providing of in kind contributions in the matters of official concern so designated by the county." Complaint, ¶ XVII. Plaintiff accordingly seeks a judgment declaring its right under § 1–45–116 to consider the issues in the May 6, 1987 resolution to be ones of "public concern."[2] Complaint, Wherefore Clause, ¶ 1.

Defendant removed the case to this court on May 29, 1987. The removal petition asserted the declaration sought in the complaint "will adjudicate the rights of petitioner granted pursuant to the First Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. section 1983."

Shortly thereafter, on June 3, 1987, defendant moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's motion asserts the complaint fails to state a claim upon which relief may be granted because "the complaint on its face seeks to abridge defendant's rights under the First Amendment to the United States Constitution." Motion to Dismiss. The motion has been fully briefed and is ripe for decision.

Before addressing this motion, however, I wish to elaborate on my reasons for denying plaintiff's motion for remand to state court. That motion, filed during the pendency of briefing on the Rule 12(b)(6) motion, was denied by Minute Order of June 23, 1987.

The remand motion was based on the "well-pleaded complaint" rule. Under that doctrine, the question whether a case arises under the Constitution or a law or treaty of the United States "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983), quoting *Taylor v. Anderson,* 234 U.S. 74, 75–6, 34 S.Ct. 724, 725, 58 L.Ed.2d 1218 (1914). Plaintiff argues its complaint "is devoid of allegations or claims bearing on federal questions or federally protected rights." Brief in Support of Motion for Remand, at 6. Plaintiff therefore concludes removal was improvidently granted.

The well-pleaded complaint rule is a familiar and pervasive doctrine. As with most rules of law, limited exceptions exist

---

1. Section 1–45–116 generally forbids the state or any of its political subdivisions from contributing to political campaigns. The statute does exempt "contributions or contributions in kind in campaigns involving only issues in which they [the government] have an official concern" from this prohibition, but certain conditions are attached to the exemption.

2. Plaintiff also requests judgment declaring its rights "to spend public funds or otherwise make contributions in kind for the purpose of informing the electorate of the county's official point of view as regards matters of official concern in the manner hereinabove alleged." Complaint, Wherefore Clause, ¶ 2. This second form of requested relief constitutes an indistinguishable reiteration of the first type of relief sought.

nonetheless. While the party bringing suit is usually the master of his claim, "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* at 22, 103 S.Ct. at 2853. Where state law creates the cause of action, "original federal jurisdiction is unavailable *unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one ... claim is 'really' one of federal law." Id.* at 13, 103 S.Ct. at 2848 (emphasis added). Thus, "[w]here the essential nature of plaintiff's claim is federal, because of preemption or otherwise, the case may be removed regardless of the manner in which the claim was characterized in the complaint." *Muenchow v. Parker Pen Co.,* 615 F.Supp. 1405, 1410 (W.D.Wis.1985). *See* 14A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3722, at 273–75 (West 1985) ("[i]f the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court must necessarily look to federal law in passing on the claim, the case is removable regardless of what is in the pleading").

The case at bar poses a perfect example of such artful pleading. The complaint does *not* seek an injunction muzzling defendant or otherwise restraining him from commenting further, or instituting lawsuit on, the propriety of the plaintiff's action in earmarking public funds for advocacy of plaintiff's political platform. If the complaint did seek such direct relief against defendant, then the First Amendment would be plainly implicated on the face of the complaint. Federal jurisdiction would clearly lie.

To avoid this possibility, the complaint is carefully couched solely in terms of interpretation of § 1–45–116. The court is asked to rule, in a factual vacuum, on the validity of those actions of plaintiff to which defendant has made public objection. In taking this latter tack, plaintiff effectively, albeit indirectly, hopes to nullify defendant's vociferous advocacy by obtaining an abstract court declaration of the legality of the county's position. In sum, plaintiff seeks to muzzle defendant by haling him into court and requiring him to defend a position he asserts in public. Only the deliberately ignorant would consider involuntary submission to litigation to be less intrusive into the sphere of constitutional freedom than meek submission to a direct order. Like the *auto da fe,* litigation lasts longer and is more painful than mere silence.

By adopting this strategy, plaintiff has sailed its ship of state into Odyssean waters. In avoiding the Charybdis of the First Amendment, the Board of County Commissioners drafted a complaint which has navigated into Scyllan clutches by failing to state a case or controversy. Under Colo.Rev.Stat. § 13–51–101 *et seq.,*

> One whose rights or status may be affected by statute is entitled to have any question of construction determined *provided that a substantial controversy between adverse parties or sufficient immediacy to warrant the issuance of a declaratory judgment exists....* Thus, one whose rights are favorably affected by a statute is entitled to seek a judicial determination thereof *so long as the court is provided with a properly adverse context.*
>
> *Silverstein v. Sisters of Charity of Leavenworth Health Services Corporation,* 38 Colo.App. 286, 559 P.2d 716, 720 (1976), *cert. denied,* January 24, 1977. (Emphasis added.) [3]

The complaint simply does not satisfy these requirements. Since the relief sought is completely divorced from the behavior of defendant to which plaintiff alludes in the body of the complaint's allegations, no substantial controversy is raised

---

**3.** The same is true, of course, for complaints originally filed in federal court under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The question in each case under that act "is whether the facts alleged under the existing circumstances present a real controversy between parties having adverse legal interests of such immediacy and reality as to warrant a declaratory judgment." *Martinez v. Winner,* 548 F.Supp. 278, 309 (D.Colo.1982), *affirmed in part and reversed in part on other grounds,* 771 F.2d 424 (10th Cir.1985).

between adverse parties. There is no adversary context. The complaint seeks an impermissible advisory opinion from the court concerning the plaintiff's compliance with the Colorado statute.

In addition, even if some substantial controversy were raised between plaintiff and defendant, no immediacy sufficient to warrant issuance of declaratory judgment has been pleaded. The May 12, 1987 election has passed. No immediacy exists concerning plaintiff's expenditures in support of its sales and use taxes. As for plaintiff's financial arrangements in furtherance of its position on a new airport, the only immediacy the complaint alleges is "controversy and ... uncertainty in the minds of the general public" over plaintiff's expenditure of funds.[4] Complaint, ¶ XVII. As explained below, such controversy and uncertainty over political issues of governance are protected and fostered by our Constitution. Paragraph XVII is wholly insufficient in allegations of immediate or threatened harm necessary to support the issuance of an injunction. *See Athens Lumber Company, Inc. v. Federal Election Commission,* 718 F.2d 363, 365 (11th Cir. 1983), *appeal dismissed and cert. denied,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984).

■ A literal application of the well-pleaded complaint rule in the instant action thus leads to the conclusion that there is no actual action because of the absence of a case or controversy. The complaint is not very well-pleaded after all, because the relief sought belies the facts alleged. Under these circumstances, I must not be misled by the specious dissemblance of the pleading. In order to assess the true nature of the complaint, I must evaluate it as a whole. *See James v. Bellotti,* 733 F.2d 989, 992 (1st Cir.1984) (court may engage "in a little statutory logic" to deduce elements implicit on the face of the complaint) (citation omitted). Such a reading plainly reveals that this complaint is infected with First Amendment violations. Jurisdiction in this court is therefore proper.

■ Turning to the merits of the motion to dismiss, it is clear that the motion must be granted. In publicly voicing his objections to plaintiff's expenditures,[5] defendant has engaged in the most protected and encouraged form of expression known in this country:

> This Court has recognized that expression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 ... [1980]. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 ... [1964]. There is a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 ... [1964]. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982).

*See also Bond v. Floyd,* 385 U.S. 116, 133, 87 S.Ct. 339, 349, 17 L.Ed.2d 235 (1966) ("[j]ust as erroneous statements must be protected to give freedom of expression the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected"), quoted in *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

■ Impermissible government curtailment of these paramount rights is not necessarily limited to direct interference. *Healy v. James,* 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972). By instituting this lawsuit, plaintiff has impermissibly sought to chill, indeed freeze, defendant's protected political speech because of his disagreement with plaintiff's funding activities. *See Weiss v. Willow Tree Civic Association,* 467 F.Supp. 803, 817 (S.D.N.Y.1979); *Miller & Son Paving, Inc. v.*

---

**4.** The same rationale applies to the sales and use tax issue, to the extent it may still be live.

**5.** This includes defendant's threats to file suit. *See Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976).

*Wrightstown Township Civic Association,* 443 F.Supp. 1268, 1273 (E.D.Pa.1978), *affirmed without opinion,* 595 F.2d 1213 (3rd Cir.1979), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *cf. Federal Prescription Service, Inc. v. American Pharmaceutical Association,* 471 F.Supp. 126, 129 (D.D.C.1979), *affirmed in part and reversed in part on other grounds,* 663 F.2d 253 (D.C.Cir.1981), *cert. denied,* 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982). Additionally, I find the suit to be frivolous, groundless and vexatious within the meaning of Colo.Rev.Stat. § 13–17–101 *et seq.*[6]

Accordingly, IT IS ORDERED that defendant's motion to dismiss this action is granted. Defendant may have his attorney fees incurred in defending this action if he files a concise statement of fees, within ten days of the date of this order, which meets the requirements of *Wright v. U-Let-Us Sky Cap,* 648 F.Supp. 1216 (D.Colo.1986). Plaintiff may file a statement of objections to the amount of fees noted within seven days of receipt of defendant's statement.

---

**6.** This finding is based on plaintiff's impermissible infringement on defendant's freedom of speech, and not on any assessment of the merits of applying § 1–45–116. I make no comment on interpretation of that statute in this memorandum opinion and order.