**FLAV–O–RICH, INC., Plaintiff,**

v.

**NORTH CAROLINA MILK COMMIS-
SION, and Its Members,
etc., Defendants.**

No. 82–1172–CIV–5.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Oct. 27, 1983.

---

Jerry W. Amos, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., for plaintiff.

W.C. Harris, Jr., Harris, Cheshire, Leager & Southern, Raleigh, N.C., for defendants.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

Plaintiff, Flav-O-Rich, Inc., a milk processor-distributor, brought this action against the North Carolina Milk Commission and its members for declaratory and injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.[1]

---

**1.** Plaintiff also alleged due process violations under 42 U.S.C. § 1983. Inasmuch as these claims were neither argued nor briefed by plaintiff in its motion for summary judgment, the court will treat them as waived. In addition the court finds that the disclosure requirement is rationally related to a legitimate state purpose. Thus this claim must be dismissed as without merit.

The action is before the court on the parties' cross-motions for summary judgment. After hearing arguments on the motions and considering the submissions of the parties, the court is of opinion that although the question is a close one, that plaintiff's motion should be denied and defendants' motion granted.

On November 10, 1981, auditors from the Milk Commission requested Flav-O-Rich's Durham Division Office to disclose information on cost and prices for certain wholesale accounts. The information requested was to be used in connection with an investigation of below-cost selling in violation of N.C.G.S. § 106–266.19. Flav-O-Rich denied the auditors access to this information. On December 8, 1981 and May 3, 1982, the auditors again requested and were refused the information.

After giving plaintiff notice that it should appear and show cause why its license should not be revoked for refusing to make the records available, the Milk Commission, on May 25, 1982, conducted a hearing. At the hearing, Flav-O-Rich did not offer evidence opting instead to read a statement concerning the importance of confidential cost and price information. As a result of the hearing, the Milk Commission, on October 12, 1982, ordered that effective November 12 of that year the license of Flav-O-Rich, Inc., Durham Division, to distribute milk in North Carolina would be suspended. Plaintiff then brought this action seeking injunctive and declaratory relief. On November 5, 1982, the court granted plaintiff's motion for a preliminary injunction.

Although other issues are raised in the record the principal issue presented by these motions is whether the requirement by the North Carolina Milk Commission that Flav-O-Rich permit inspection of its records which results in an exchange of price information is exempt from the Sherman Act under the "state action" doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 515 (1943). When addressing the "state action" doctrine, the threshold issue of whether the activity violates the

Sherman Act must be resolved. *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). In this instance, Flav-O-Rich is complaining of an exchange of price information which leads to price stabilization in violation of Section 1 of the Sherman Act. *United States v. Container Corporation,* 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969). In *Container Corporation* there was an exchange of specific sales and price information of identified customers. The court held that where the industry was dominated by relatively few sellers, the product is fungible, competition for sales is primarily through price and demand is inelastic, such that buyers place orders only for short term needs, the exchange tends toward price uniformity and is therefore illegal *per se.*

▮ Plaintiff's exhibits clearly document exchanges of price information. Moreover, the milk industry in North Carolina is characterized by a small number of sellers and a large number of buyers. There is little perceptible difference between brands of milk and the primary means of competition among processor-distributors is aggressive pricing. Although small or moderate fluctuations in price do not have a significant effect on the volume of milk and dairy products sold, competition through price is only significant to the extent that an individual seller may increase its share of the market by taking customers away from its competitors. With the obvious short-term life span of milk, orders are, by necessity, placed on the basis of short-term needs. Under these circumstances, the court agrees with plaintiff that price exchanges would result in price stability in violation of *United States v. Container Corporation, supra.*

▮ Having satisfied the initial requirement that the complained of activity violates the antitrust laws, the issue of whether the actions of the North Carolina Milk Commission are immune from the antitrust

laws under the "state action" doctrine must be decided.[2]

■ In *Parker v. Brown,* the Supreme Court held that the federal antitrust laws did not prohibit a state, in the exercise of its sovereign powers, from imposing certain anti-competitive restraints. *Community Communications Company v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). Cases interpreting the *Parker v. Brown* doctrine reveal that unless the activity is an act of the state, done in its sovereign capacity, or is that of a state agency under a clearly articulated and affirmatively expressed policy, *e.g., California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. at 105, 100 S.Ct. at 943, the exemption is inapplicable. *Community Communications Company v. City of Boulder,* 455 U.S. at 52, 102 S.Ct. at 841.

■ Defendants contend that because the Commission is an instrumentality of the state, N.C.G.S. § 106–266.8, the state was acting in its sovereign capacity and therefore immune from antitrust liability. Thus it is argued that the two-pronged *Midcal* analysis is unnecessary. *See, e.g., Deak-Perera Hawaii v. Department of Transportation,* 553 F.Supp. 976 (Hawaii 1983). It is not the status of a defendant as an agency, however, which entitles it to the exemption. *City of Lafayette v. Louisiana Power & Light Company,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). In *Deak,* for example, the defendant was the state department of transportation. Because the state can act only through its agents, the action of the state transportation department can be considered an act of the state itself. In contrast, defendant is a regulatory commission which acts much like the agency in *Midcal.* Accordingly, the two-pronged test is appropriate.

■ Under the *Midcal* test, defendants must show first that the challenged activity is clearly articulated in affirmatively expressed state policy. To meet this test all that must be shown is that the agency is carrying out the mandate of the state. *City of Lafayette v. Louisiana Power & Light Company, supra* (Brennan, J., concurring). It may be derived "from the authority given a governmental entity to operate in a particular area ...." *Id.* at 415, 98 S.Ct. at 1138 (Brennan, J., concurring) (quoting the lower court opinion, 532 F.2d 431 at 434). In addition, the mandate may be demonstrated by explicit language in the statutes or it may be inferred from the nature of the powers and duties conferred the agency. *Princeton Community Phone Book, Inc. v. Bate,* 582 F.2d 706 (3d Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978).

"[T]he purpose of the act creating the Milk Commission was to protect the public interest in a sufficient, regularly flowing supply of wholesome milk and, to that end, to provide a fair price to the milk producer for his product." *North Carolina ex rel. North Carolina Milk Commission v. National Food Stores, Inc.,* 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967). To carry out its mission, the Commission was given the power to examine records and require their production. N.C.G.S. § 106–266.8(5). To this end, the subpoena power could be invoked if necessary. *Id.* In addition, the legislature made it unlawful for anyone to sell milk below cost, N.C.G.S. § 106–266.19, and gave the Commission the power to investigate all matters pertaining to the production, processing, storage, distribution and sale of milk. N.C.G.S. § 106–266.-8(2). The Commission also may act as mediator concerning controversial issues that may arise among or between producers or distributors. N.C.G.S. § 106–266.8(4). From these grants of power it is clear that

---

**2.** Plaintiff has argued that this court's prior memorandum of decision accompanying the preliminary injunction forecloses consideration of this issue. This argument, however, misperceives the inquiry when a preliminary injunction is before the court. At that stage, the court need only inquire whether serious questions of law are at issue. *Blackwelder Furniture Company v. Seilig Manufacturing Company,* 550 F.2d 189 (4th Cir.1977). The decision was not, as plaintiff's argument presumes, a decision on the merits of the antitrust claim for relief.

the incidental exchange of price information of which plaintiff complains falls within the affirmatively expressed and articulated state policy.

This is further evidenced by the acts of which plaintiff complains. Plaintiff asserts five areas in which price and cost exchanges occurred. Each instance, however, was a natural consequence of the Commission carrying out explicit powers. For example, Flav-O-Rich complains that price and cost exchanges occurred because of direct contact between Commission members and processors. This occurs when processors inform the Commission that a competitor is believed to be charging below cost in violation of N.C.G.S. § 106–266.19. The Commission then begins an investigation in the area, N.C.G.S. § 106–266.8(2), and may later inform the complaining processor that the price is or is not below cost, or that there has been an adjustment, and the complainant must either meet the new cost or not charge below its cost. Thus the exchange occurs as a direct result of the investigation and the attempts to prevent below-cost sales in violation of the statute. Otherwise, continued below-cost sales would result in ruinous competition and threaten an orderly milk market, results the statute was explicitly designed to correct. *See* 1953 N.C.Sess.Laws Chapter 1338.

The second example of an exchange occurs at public hearings to determine if below-cost pricing in violation of N.C.G.S. § 106–266.19 has occurred. At the hearing, cost and price figures surely become exposed. However these hearings are expressly contemplated by the state, *id.*, and certainly such evidence must be explored to determine if below-cost sales have occurred. That the information in some sense becomes "exchanged" is only incidental to the procedure employed by the state to investigate below-cost pricing.

Thirdly, Flav-O-Rich complains of processors meeting with the Commission to discuss pricing. These meetings, however, are affirmatively authorized by the legislature. N.C.G.S. § 106–266.8(4). Additional-

ly, the Commission has the power to set maximum and minimum retail and wholesale prices charged for milk. N.C.G.S. § 106–266.8(10)(b). This may occur after investigations and hearings have been conducted. *Id.* Meeting with processors to discuss this alternative and others which may stabilize the industry is certainly within the legislative mandate.

Fourth, plaintiff complains that because the Commission has two processors as members, whenever price or cost is discussed, an exchange occurs. However, N.C.G.S. § 106–266.7(a) requires the Speaker of the House to appoint two members to the Commission, one of whom must be a processor. The Commissioner of Agriculture, who appoints three members, must likewise appoint one who is a processor. *Id.* That they would be privy to Commission information could not be more expected.

The last example of information exchanging occurs through the media. While there is no statutory requirement that information be given to the press, the below-cost hearings are public and the press may freely attend. Moreover, it is not every exchange of information which constitutes a Sherman Act violation. *United States v. United States Gypsum Company*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). It is doubtful that the occasional dissemination of information through the media constitutes a Sherman Act violation.

■ To summarize, the totality of the exchanges of price information of which plaintiff complains would normally amount to a violation of Section 1 of the Sherman Act. Yet, a review of the legislative mandate of the Milk Commission discloses that these exchanges were authorized by the legislature as a clearly articulated and affirmatively expressed policy of the state. The exchanges occur as a natural result of the Commission's carrying out the very specific mandate to prevent below-cost pricing and investigate where it occurs. The Commission is also to investigate methods of maintaining stable markets and may fix wholesale and retail prices. Price informa-

tion exchanges in this context clearly meet the first prong of the *Midcal* test.

The second prong of the test is also met. Not only is the Milk Commission to hold regular meetings, N.C.G.S. § 106–266.7(j), but the very active supervision of the below-cost statute with its consequent flow of price and cost information is the essence of this litigation. This supervision clearly meets the second prong of the test.

Accordingly, the "state action" doctrine of *Parker v. Brown* constitutes a defense to the action and the Commission's motion for summary judgment must therefore be granted and Flav-O-Rich's motion for summary judgment must be denied. An appropriate judgment shall be entered.